## CUMBERLAND TELEPHONE & TELEGRAPH CO. v. LOUISIANA PUBLIC SERVICE COMMISSION et al.

(District Court, E. D. Louisiana, Baton Rouge Division.  July 24, 1922.)

### No. 95.

1. **Telegraphs and telephones** &#9758;33(1)—**Rates established by state commission presumed reasonable.**

   ·Telephone rates established by a state commission are presumed just and reasonable, and the burden of proving the contrary rests on the company affected. That the commission granted an increase in rates does not establish that the rates previously in force are unjust, unreasonable, and confiscatory, when restored by the commission more than a year later, after business conditions had changed.

2. *Telegraphs and telephones* &#9758;33(1)—*Rates based on value of property used.*

   A telephone company is entitled to a fair return on the value of the property used and useful in its business, and in determining the value of such property, as affecting the reasonableness of intrastate rates, the property used in its intrastate business should be considered separately from that used in interstate business.

**3. Telegraphs and telephones ☞33(1)—Justness of rates cannot be determined on mere estimate of value of property.**

A mere estimate by a telephone company that a certain proportion of the total value of its property is devoted to its intrastate business is not a satisfactory basis on which to determine that rates fixed by a state commission for its intrastate service are confiscatory.

**4. Telegraphs and telephones ☞33(1)—Inadequacy of rates fixed must be clearly shown.**

Before telephone rates authorized by rate-making bodies are interfered with by the courts, the evidence ought to be clear and convincing that the rates attacked are inadequate.

Foster, District Judge, dissenting.

In Equity. Suit by the Cumberland Telephone & Telegraph Company against the Louisiana Public Service Commission and others. On application by complainant for interlocutory injunction, under Judicial Code, § 266 (Comp. St. § 1243). Denied.

Hunt Chipley and E. D. Smith, both of Atlanta, Ga., and J. C. Henriques and J. Blanc Monroe, both of New Orleans, La., for plaintiff.

A. C. Coco, Atty. Gen., Wylie M. Barrow, Asst. Atty. Gen., Huey P. Long, of Shreveport, La., and A. H. Roberts, of Nashville, Tenn., for defendants.

Before BRYAN, Circuit Judge, and CLAYTON and FOSTER, District Judges.

BRYAN, Circuit Judge. The plaintiff, Cumberland Telephone & Telegraph Company, by its bill in equity seeks to enjoin an enforcement of the following order entered by the Louisiana Public Service Commission May 13, 1922:

"It is ordered and a rehearing is granted in this case on and from the order of the Railroad Commission of Louisiana of February 26, 1921, and on the rate allowances made in said order, or made in said order of April 1, 1921, or allowed to be collected in said order of April 1, 1921, and pending the final hearing and determination of this case, from and after this date, all rate advances allowed on February 26, 1921, and thereafter, are hereby suspended, and the rates and charges to be made and to be collected by the Cumberland Telephone & Telegraph Company within the state of Louisiana will be such as were in force prior to the 26th day of February, 1921, and at the time this application was filed; and be it further

"Ordered, that the various interested parties be given notice that a final hearing of this matter will be held in the city of New Orleans, beginning on the 27th day of June, 1922, at which time all interested parties will be heard."

In September, 1920, the plaintiff applied to the commission for an increase in telephone exchange rates over those established by the Postmaster General during federal control. After hearings, and on February 26, 1921, the commission entered an order granting the increased rates prayed for by the plaintiff. April 1, 1921, the commission entered an order somewhat modifying the rates, reopening its proceedings with reference thereto, and providing for the taking of further testimony. Such was the status of plaintiff's application for increased rates when the commission issued its order of May 13, 1922, above set out, granting a rehearing, reinstating the rates put into effect during federal

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

control, and setting the whole matter down for final hearing on June 27, 1922. The plaintiff's property was returned to it by the Postmaster General August 1, 1919.

The bill contains the following averments: That upon its total actual average investment, including both interstate and intrastate exchange and toll business, the plaintiff earned 5.92 per cent. net revenue for the year ending July 31, 1920, and at the rate of 3.03 per cent. per annum during the months of August, September, October, and November, 1920; that for the year 1921 the plaintiff operated under the rates established by the Postmaster General during the months of January and February, and under the increased rates authorized by the commission's order of February 26, 1921, during the remaining 10 months of that year, and earned a net revenue of 7.15 per cent. upon its average investment, including both interstate and intrastate business; that all of plaintiff's telephone exchange business in Louisiana is intrastate, but that its toll business is partly intrastate and partly interstate; that approximately 89 per cent. of plaintiff's total property is used exclusively in intrastate business, and approximately 11 per cent. exclusively in interstate toll business; that the reasonable value of plaintiff's property in Louisiana, devoted to both interstate and intrastate business, as of May 13, 1922, the date of filing the bill, was in excess of $15,000,000; that for the year 1921 the average investment in exchange lines equipment was $7,993,207.60, in toll lines $3,326,013.12, and that plaintiff's total average investment was $12,942,281.61, which included also land, buildings, supplies, and working capital; that for the same year the operating revenues were: From exchange service, $3,540,440.51; from toll service $1,553,853.29; and from miscellaneous sources $77,668.33—a total of $5,171,962.13; that the total operating costs were $4,246,635.08, and the net revenue $924,327.85; that the rates are confiscatory, and, if enforced, would deprive plaintiff of its property without due process of law.

The averment that plaintiff's total property exceeds $15,000,000 in value is attempted to be supported by an affidavit to that effect, but it appears that the affidavit itself is based upon an estimate. No actual valuation has as yet been made. In its answer the commission alleges that the value of plaintiff's entire property in Louisiana is not in excess of $9,324,212, which was the value placed upon it by plaintiff for taxation in 1920, and that the property devoted to intrastate exchange service is of less value. In considering this application, weight should be given to the fact that the commission has not issued its final order. It had set an early date for a final hearing before application for injunction was made.

[1] The rates fixed by the commission are presumed to be just and reasonable. The burden is upon the plaintiff to show that they are unjust, unreasonable, or confiscatory. Railroad Commission of Louisiana v. Cumberland Telephone & Telegraph Co., 212 U. S. 414, 29 Sup. Ct. 357, 53 L. Ed. 577. If it be assumed that the same rates were unreasonably low in 1920, it does not follow that they would be so at this time. There has been a recession of prices, and current rates upon invested capital are lower now than they were in 1920, and of these facts

we may take judicial notice. Galveston Electric Co. v. City of Galveston, 258 U. S. ——, 42 Sup. Ct. 351, 66 L. Ed. ——, decided April 10, 1922. Under these circumstances, we do not think the fact that the commission granted an order in February, 1921, increasing rates, is sufficient to take away the presumption of reasonableness from the order of May 13, 1922, suspending the increased rates, and re-establishing the old rates pending final decision. The rates complained of have not been subjected to a practical test, and shown to be unremunerative under present conditions.

[2] The plaintiff is entitled to a fair return upon the value of the property used and useful in conducting its telephone business. City of Houston v. Southwestern Bell Telephone Co., 258 U. S. ——, 42 Sup. Ct. 486, 66 L. Ed. ——, decided May 29, 1922. In order to determine what is a reasonable return, it is essential to know the value of the property devoted to the business under consideration. This application for injunction is limited to telephone exchange rates which are alleged to be exclusively intrastate. Of course, there is intrastate toll service also; but no complaint is made as to toll rates. In considering intrastate rates, the value of property used in intrastate business should be considered separately, and not in connection with the value of property used in interstate business. The Minnesota Rate Cases, 230 U. S. 352, 33 Sup. Ct. 729. 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18.

[3] The estimate of $15,000,000, placed by plaintiff upon the value of its property as a basis for determining the reasonableness of the rates involved, includes interstate business. That estimate includes approximately $1,400,000 of capital invested during the year 1922. The additional new capital doubtless produced additional revenue, but how much is not shown, or even estimated. The value of the intrastate exchange property and facilities alleged to be devoted to intrastate service is not anywhere shown by the bill or supporting affidavits. The estimate that 89 per cent. of the total value of plaintiff's property is devoted to intrastate service, including intrastate toll service, and that 11 per cent. is devoted to interstate toll service, is not a satisfactory basis on which to conclude that rates for the intrastate exchange service are confiscatory. But, upon that basis, if there be deducted, from the total average investment for 1921 of $12,942,281.61, the investment in toll lines of $3,326,013.12, and all other investment items be charged to exchange line equipment, the investment value of exchange line equipment for that year could not possibly exceed $8,616,268.48. The operating revenue derived was upward of $3,500,000. No separate or satisfactory showing is made of the operating cost.

The commission contends that there should be other large deductions from the capital invested and from the operating costs; but it is not considered necessary to pass upon these contentions of the commission, for the reason that the case as made by the plaintiff does not, in our opinion, sustain a right to the relief sought. There is no separation of values, revenues, cost of operation, or earnings, either as between interstate and intrastate business, or as between intrastate exchange and toll business.

[4] The plaintiff was put upon notice by the order of April 1, 1921, by which the question of the reasonableness of its rates was reopened for further investigation, that the rates might be reduced again, and that the order of February 26, 1921, was temporary in its nature. The burden, therefore, remained upon the plaintiff, as the moving party, to separate, not only its interstate from its intrastate telephone business, but also its intrastate exchange business from its intrastate toll business, and to show by facts, and not by estimates, that the rates attacked were not sufficient to enable it to earn a fair return upon the value of its intrastate exchange business. Before the rates authorized by rate-making bodies are interfered with by the courts, the evidence ought to be clear and convincing that the rates attacked are inadequate.

We are of opinion that the showing thus far made by plaintiff is insufficient, and the application for interlocutory injunction is therefore denied.

FOSTER, District Judge, dissents.