### CAMBRIDGE ELECTRIC LIGHT CO. v. ATWILL et al.

District Court, D. Massachusetts. April 11, 1928.

No. 2931.

1. **Injunction ⬅135—Granting of temporary injunction is within trial court's discretion.**

Granting of a temporary injunction pending final hearing is within the sound discretion of the trial court.

2. **Public service commissions ⬅23—Rates fixed by Public Utilities Department are presumed reasonable, and jurisdiction to enjoin enforcement thereof is exercised only to prevent irreparable injury.**

Rates fixed by Public Utilities Department are presumed to be just and reasonable, and burden is upon utility to show that they are unjust, unreasonable, or confiscatory, and jurisdiction of court to enjoin rates is not exercised except when necessary to prevent great and irreparable injury,

3. **Courts ⬅262(4)—Governmental acts within state's general power are presumed valid, and are not interfered with by federal court upon mere balance of injuries.**

Governmental acts within the general power of the state are presumed valid, and should not be interfered with by the federal court upon a mere balance of possible injuries.

4. **Injunction ⬅21—To warrant interference with Public Utilities Department's rate determination, by temporary injunction, there must be reasonable probability that utility will prevail on final hearing.**

To warrant interference with decision of Public Utilities Department by a temporary injunction to restrain enforcement of rates pendente lite, it must appear that there is a reasonable probability that the utility will prevail upon final hearing.

**5. Public service commissions ⬤⟹21—Utility's valuation, fixed by Public Utilities Department, should not be disturbed unless based on fundamental error of fact or law.**

Valuation set by Public Utilities Department on utility's property should not be disturbed by court unless it.is satisfied that valuation, which carries presumption of correctness, was based upon fundamental error of fact or law.

**6. Public service commissions ⬤⟹7—What constitutes fair return to utility is question of fact, depending on circumstances, including rate of interest.**

What constitutes fair rate of return to utility is question of fact depending on circumstances and particular location, and rate of interest may also be taken into consideration.

**7. Public service commissions ⬤⟹22—Conflicting evidence as to value of utility's property, legal rate of return, and amount of return under department's order reducing lighting rates, held to require refusal of temporary injunction to restrain enforcement of reduced rates.**

Conflicting evidence as to value of electric light company's property, legal rate of return, and amount of net return which new rate would produce, and allocation of capital invested, held, to require refusal of injunction pendente lite to restrain Public Utilities Department from enforcing order requiring material reductions in rate for lighting, where utility's loss from refusal would be comparatively small.

**8. Courts ⬤⟹262(4)—Mere possibility of loss does not warrant interference with state action by temporary injunction.**

Mere possibility of loss is not sufficient reason for granting temporary injunction interfering with state action in state field.

In Equity. Application by the Cambridge Electric Light Company against Henry C. Atwill and others for an injunction pendente lite. Restraining order vacated, and injunction pendente lite refused, and case referred to a special master, with instructions.

Robert G. Dodge, of Boston, Mass., for plaintiff.

Arthur K. Reading, Atty. Gen., and Sherman L. Whipple and Lothrop Withington, both of Boston, Mass., for defendants.

Before BINGHAM, Circuit Judge, MORTON, and MORRIS, District Judges.

MORTON, District Judge. This is an application for an injunction pendente lite, to restrain the Public Utilities Department of Massachusetts from enforcing an order requiring the plaintiff to make material reductions in its rate for domestic and commercial lighting. The record before us consists of the pleadings and ex parte affidavits filed by both sides and exhibits therein referred to.

[1, 2] The principles upon which such injunctions are granted or refused are well established. "It is well settled that the granting of a temporary injunction, pending final hearing, is within the sound discretion of the trial court." Sanford, J., Prendergast v. N. Y. Telephone Co., 262 U. S. 43 at 50, 43 S. Ct. 466, 469, 67 L. Ed. 853. "The rates fixed by the commission are presumed to be just and reasonable. The burden is upon the plaintiff to show that they are unjust, unreasonable, or confiscatory." Bryan, J., Cumberland T. & T. Co. v. Louisiana P. S. Commission (D. C.) 283 F. 215, 217, 219 (statutory court). See, too, Railroad Commission of Louisiana v. Cumberland T. & T. Co., 212 U. S. 414, 421, 29 S. Ct. 357, 53 L. Ed. 577. "It is elementary that the jurisdiction now invoked is not to be exercised except 'in a case reasonably free from doubt,' and 'when necessary to prevent great and irreparable injury.'" Mass. State Grange v. Benton, Atty. Gen. (D. C.) 10 F.(2d) 515 (Mass. statutory court), quoting Cavanaugh v. Looney, Atty. Gen., 248 U. S. at 456, 39 S. Ct. 142, 63 L. Ed. 354.

[3, 4] The decisions relied on by the plaintiff conform to these rules. In the Ohio Bell Telephone Case (D. C.) 3 F.(2d) 701, it was found by the court that the valuation of the commission was "probably too low"; and in the Monroe Gaslight & Fuel Co. Case (D. C.) 292 F. 139, it was said "these decisions require that a preliminary injunction should issue, if there is *reasonable probability* [italics ours] that the utility will prevail upon a final hearing," etc. Cases in which there has been a full hearing before a master stand, of course, upon a very different footing from the present application. The considerations mentioned by Judge Colt in Carpenter v. Knollwood Cemetery (C. C.) 188 F. 856, as governing the issue of injunctions pendente lite, refer to cases between private individuals. Where the acts of a state are drawn into question, somewhat different principles apply, as the foregoing quotations show. Governmental acts within the general power of the state are presumptively valid, and ought not to be interfered with by a federal court upon a mere balance of possible injuries. To warrant interference, it must appear that there is a reasonable probability that the utility will prevail upon final hearing.

The question is whether the plaintiff makes out a case within these requirements. The order which is attacked reduced its rate on domestic and commercial lighting from 8 cents to 5½ cents per kilowatt hour. There is no contention that the new rate will not produce income enough to pay all operating

expenses; but the plaintiff does contend that it will not furnish an adequate return on the invested capital. In support of this contention it has filed the affidavit of Edward J. Cheney, apparently a competent expert on such matters, valuing its property for rate-making purposes at about $8,000,000, and stating that the new rate will not yield a return of over 4.83 per cent. on this amount. There are other affidavits to the same effect, and to the point that such a rate of return will be inadequate and confiscatory; the company contending that the rate to be adequate must return at least 8 per cent. on the value of the invested property. Mr. Cheney and some of the other affiants testified before the department in the rate proceeding.

The facts relied upon by the state authorities are found in the decision of the Public Utilities Department, in the returns made from time to time by the plaintiff company, in certain exhibits introduced by the plaintiff company in the rate proceedings before the department, and in certain affidavits. The department in its decision finds "that the fair value (of the) property for rate-making purposes, * * * based upon the principles enunciated by the Supreme Court of the United States in McCardle v. Indianapolis Water Co., 272 U. S. 400, 47 S. Ct. 144, 71 L. Ed. 316, and in other recent decisions of that court, does not exceed $5,500,000, and that the fair value of that portion of its property devoted to its domestic and commercial business, based upon these same principles, does not exceed $2,500,000," that under the new rate the company's earnings, allowing nothing for increase of business caused by the reduction in price, will be more than sufficient to pay 6 per cent. on the valuation stated, and that such a return is "very attractive" in Massachusetts for securities of this sort. The department was also of the opinion that the company had, for the purpose of defending its high rate, allocated to its domestic and commercial lighting an undue proportion of its capital invested, and that, making proper adjustments for this, the new rate gave a return of much more than 6 per cent. on the capital used in that part of the business. The decision of the department appears on its face to have dealt with the questions presented fairly and intelligently.

[5] The parties are thus in disagreement as to the value of the property, the legal rate of return, and the amount of net return which the new rate will produce. Upon the first point we are asked to accept for present purposes the valuation of the company's expert and officers, against that of the department made after hearing the same expert and presumably the same officers. Under the principles above stated, this ought not to be done unless we are satisfied that the department valuation, which carries a presumption of correctness, is based upon some fundamental error of fact or of law. The plaintiff contends that the department has proceeded upon the Massachusetts theory of valuation in disregard of the principles established by the United States Supreme Court. In the case of the Worcester Electric Light Co., the court evidently so viewed the findings of the department, and the injunction was granted. 23 F.(2d) 891. In the present case, which was decided by the department after the Worcester Case had been decided by the court, the department explicitly states that its valuation has been arrived at under the rules of the United States Supreme Court. There is nothing in the record which warrants us in ignoring or disregarding this statement. The value found is a fact, in determining which the department declined to accept the evidence of value now submitted to us by the plaintiff. We are not dealing with the case on full proofs, but only in a preliminary way and on the evidence as it stands. No sufficient reason is shown for rejecting the decision of the department, which, as above stated, is presumptively correct, in favor of affidavits submitted by the plaintiff, largely from the same witnesses whose testimony in extenso was regarded as unconvincing by the commissioners.

[6] As to the rate of return: On this point also the department had before it, as we understand, substantially the same evidence as is before us, viz. that the rate of return should be 8 per cent. This evidence was rejected, and the department adopted, as stated in its decision, a rate of 6 per cent. This also is primarily a question of fact depending upon a number of factors. What would be a fair return for a company in one locality at a certain period might be inadequate or excessive for other companies differently situated. The rate of interest has also to be taken into consideration. Bluefield Co. v. Public Service Com., 262 U. S. 679, 693, 43 S. Ct. 675, 67 L. Ed. 1176. On the plaintiff's own figures, it will get a return under the new rate of about 5 per cent. on its valuation. On the figures of the department its return will be about 7 per cent. We are not at present satisfied that a return of less than 8 per cent. would ipso facto be confiscatory, or that the return which the plaintiff will actually obtain under the new rate will be of

that character. These points should await final hearing and possibly the results of actual experience.

[7, 8] The parties are in further disagreement, as above noticed, as to the correct allocation of capital invested between the different kinds of service furnished by the plaintiff, as to allowable expenses of operation, and perhaps on other matters. It may be that parts of the schedule should be revised upward, or possibly that the company should be somewhat differently capitalized. These are material questions, much too doubtful for any judgment to be passed upon them at this time. If it shall eventually be established that the new rates are so inadequate as to be confiscatory, the company will have lost such part of the difference, relatively small, as proves to be uncollectible, unless an injunction be presently granted. But this difference is not vital; and the possibility of the loss of it is, as the authorities above referred to show, not of itself sufficient reason for a temporary injunction interfering with state action in a state field.

It follows that the restraining order must be vacated and an injunction pendente lite refused. The case must be referred to a special master, with instructions to expedite the hearings.